# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PETER M. JOSEPHSON,**
        Petitioner,

v.                                          Case No. 10-C-0257

**ANNA BOATWRIGHT, Warden,**
**New Lisbon Correctional Institution,**
        Respondent.[1]

## DECISION AND ORDER

Peter M. Josephson brings this habeas petition alleging that he was denied his Sixth Amendment right to present a defense when, during the course of his trial for possession of child pornography and repeated sexual assault of the same child, the trial court, pursuant to Wisconsin's rape-shield law, Wis. Stat. § 972.11(2), denied his request to question the victim about her sexual relationship with another person.

## I.  BACKGROUND

The victim of the sexual assault, Jennifer C., testified at trial that she met Josephson in 2004, when she was thirteen, after her mother told Josephson that Jennifer could babysit for his two children at his home. At times, Jennifer would spend the night at Josephson's home because Josephson left for work at five o'clock in the morning and did not want to pick Jennifer up at such an early hour. While Jennifer was still thirteen, she and Josephson began to have sexual contact, including oral sex and intercourse. Jennifer

---

[1] While this action was pending, petitioner was transferred from Dodge Correctional Institution to New Lisbon Correctional Institution. Accordingly, the Warden of New Lisbon Correctional Institution, Anna Boatwright, has been substituted for the Warden of Dodge Correctional Institution, Jim Schwochert.

testified that this sexual relationship continued for two years, until she was fifteen, and that it involved hundreds of instances of sexual contact. She testified that she and Josephson said they loved each other, and they talked about getting married when Jennifer turned eighteen.

Jennifer also testified that in December 2006, Josephson bought a digital camera and took pictures during their sexual encounters. When Jennifer eventually told the police about her relationship with Josephson, she described three of these pictures and said that Josephson kept them under his bed. The police obtained a search warrant for Josephson's home, and they found the three photographs Jennifer had described in a picture frame on Josephson's shelf, behind a picture of Josephson's son. They also found a picture of Jennifer and Josephson kissing.

Two of the sexually explicit photographs depicted a man's penis, but the man's face is not visible in either. One of them showed Jennifer licking the penis, and the other showed the penis in a vagina, which Jennifer testified was hers. Jennifer testified that the penis in both pictures was Josephson's. She also testified that the third sexually explicit photograph – which showed her naked on a bed with her legs spread and what appeared to be semen coming out of her vagina – was taken by Josephson immediately after the two had had sex.

Josephson's defense at trial was that he never had sexual contact with Jennifer and didn't know the pictures were in his home. Josephson argued that Jennifer's mother was pressuring Jennifer to make false allegations against Josephson, and that as a result of this pressure Jennifer hid the pictures in Josephson's house in order to corroborate the lies she would eventually tell to the police. To strengthen this defense, Josephson wanted to

ask Jennifer during cross-examination whether she had had a sexual relationship with another person – possibly someone named Josh.  The reason for this was to show that Jennifer had had sex with another man and therefore could have taken the pictures with someone other than Josephson.  Josephson filed a motion in limine on this issue prior to trial, and the state objected on the ground that the question was precluded by Wisconsin's rape-shield law.

During the hearing on the motion in limine, the trial court asked Josephson's lawyer to identify exactly what he wanted to ask Jennifer during cross-examination.  In response, counsel stated that he wanted to ask her whether she had had sexual contact with other people.  If she said no, counsel intended to impeach her with a statement she made to her mother and some counseling records that mentioned Josh.   (Trial Transcript [Answer Ex. I] at 13.)  However, counsel did not state that he wanted to present evidence indicating that Jennifer's other sexual relationship involved taking sexually explicit photographs.[2]  Ultimately, the trial court concluded that the question about other sexual contact was prohibited under the rape-shield law.  The jury went on to find Josephson guilty on all counts of sexual assault of a child and on the child pornography charge.

---

[2]Petitioner in this court states that he would have been able to produce evidence showing that Jennifer and Josh took sexually explicit photographs, but no such evidence was presented to the state trial court during the offer of proof or to the state court of appeals. I therefore cannot consider such evidence. See Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").  In any event, the evidence that supposedly establishes that Jennifer and Josh took sexually explicit photographs does not actually do so.  The evidence consists of a statement that Jennifer's mother wrote to Josephson's probation agent in which she indicates that Jennifer told her mother that Josh had used his phone to take pictures of Jennifer's friend while naked.  (See Petition Ex. 5 at 2.)  This, of course, is not evidence that Josh took pictures of Jennifer while the two of them were engaged in sexual contact.

Josephson appealed the rape-shield ruling to the Wisconsin Court of Appeals, arguing that the ruling denied him his Sixth Amendment right to present a defense. The Court of Appeals found no constitutional violation, and the Wisconsin Supreme Court denied review.

## II. DISCUSSION

Because the state courts resolved Josephson's Sixth Amendment claim on the merits, I may grant Josephson's habeas petition only if the decision of the Wisconsin Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1). A decision is "contrary to" established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an unreasonable application of Supreme Court precedent when the court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08.

The state court of appeals, in adjudicating Josephson's Sixth Amendment claim, did not reach any conclusions of law that were opposite to a conclusion reached by the Supreme Court. Nor did it confront facts that were materially indistinguishable from a relevant Supreme Court precedent and arrive at a result opposite to that reached by the

4

Supreme Court. This means that Josephson may obtain habeas relief only if the state court's decision involved an unreasonable application of Supreme Court precedent.

The Supreme Court precedent applicable to the present case is found in <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973), and <u>Davis v. Alaska</u>, 415 U.S. 308 (1974). These cases recognize the importance that cross-examination and the presentation of favorable witnesses may play in securing the rights guaranteed by the Sixth Amendment. <u>See Hammer v. Karlen</u>, 342 F.3d 807, 811 (7th Cir. 2003). However, they do not establish an absolute right to cross-examination or the presentation of favorable witnesses. Rather, they are "highly fact-specific" and do "no more than establish a rule that a trial court may not abridge a defendant's cross-examination or presentation of favorable witnesses when doing so would unduly impair his or her ability to present a reasonable defense." <u>Id.</u> at 811-12. Thus, the dispositive question in the present case is whether the state court of appeals unreasonably determined that the trial court did not unduly impair Josephson's ability to present a reasonable defense when it denied his request to ask Jennifer whether she had had sexual contact with someone else and his request to impeach her with prior inconsistent statements, if necessary.

As noted, Josephson's defense was to argue that he was not the person in the sexually explicit photographs and that he did not even know that the photographs were in his home. He asked the jury to believe that Jennifer, under pressure from her mother, fabricated a story about a sexual relationship between her and Josephson.[3] Josephson never identified a reason why Jennifer's mother would have wanted Jennifer to lie about

---

[3] Josephson also suggested that Jennifer wanted to frame Josephson because he refused to pay a $300 cable bill that she had asked him to pay.

5

Josephson, but he was allowed to offer evidence indicating that the mother threatened to send Jennifer to a foster home and refuse to allow her to obtain her driver's license if she did not tell the police that she and Josephson were having sex. Under Josephson's version of events, Jennifer decided in response to her mother's threats to hide the three sexually explicit photographs – which actually depicted her and another man – along with the picture of her and Josephson kissing in the picture frame in Josephson's home. (Josephson claimed that the picture of him and Jennifer kissing was not what it looked like – in that the kiss, though on the lips, was meant to be playful rather than sexual.) Josephson also introduced evidence establishing that Jennifer could have hidden the photographs in his house because she knew from babysitting that he kept his back door open. Finally, Josephson offered testimony from a neighbor who reported that another neighbor had witnessed Jennifer entering Josephson's home at a time when the neighbor knew Josephson was not at home.

The trial court allowed Josephson to pursue this defense, and the court's refusal to allow Josephson to ask Jennifer whether she had had sex with someone else did not unduly impair it. The defense itself implied that Jennifer had had sex with someone else – otherwise, how could she have obtained the sexually explicit photographs she supposedly used to frame Josephson? – and the prosecution did not try to undermine the defense by arguing that Josephson had not shown that Jennifer had the opportunity to take sexually explicit photographs with someone other than Josephson. Of course, if Josephson had been allowed to ask Jennifer whether she had had sex with someone else and she said yes, the plausibility of the defense would have increased slightly, because then one component of the defense – that Jennifer had had sex with someone else and

6

therefore could have taken the pictures with someone other than Josephson – would have been confirmed. But confirming that Jennifer had had sex with someone other than Josephson was not a vital part of the defense. What was vital was persuading the jury that Jennifer had concocted an elaborate story about a two-year relationship with Josephson and that she went so far as to plant sexually explicit photographs in Josephson's home to buttress her story. If the jury accepted this much of Josephson's defense, surely it would not have stopped short of acquitting him because of the absence of evidence confirming that Jennifer could have taken the photographs with someone else. The trial court did not prevent Josephson from offering evidence on the vital components of his defense – Jennifer's motive to lie about the relationship and her opportunity to hide the pictures in Josephson's home – and so it did not deny Josephson his right to present a defense. See Sandoval v. Acevedo, 996 F.2d 145, 149 (7th Cir. 1993) (holding that application of rape-shield law was not unconstitutional where it did not deny the defendant an opportunity to introduce vital evidence). Thus, I cannot find that the state courts unreasonably applied Chambers or Davis.

Finally, I note that even if the trial court's decision was erroneous and the court of appeals's decision involved an unreasonable application of Supreme Court precedent, the constitutional violation was harmless. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (petitioner bears burden of proving that constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict"). The evidence that Josephson had had a sexual relationship with Jennifer and knew that the sexually explicit pictures were in his home was overwhelming. First, Jennifer's testimony was extremely persuasive, inasmuch as she described her relationship with Josephson in more detail than

7

would have been expected if she had been making it up. (See generally Trial Transcript [Answer Ex. I] at 100-154.) Second, Josephson's daughter, who was eleven at the time of her testimony, testified that when Jennifer slept over she would sleep in bed with Josephson and that when they slept together they were both naked. She also testified that they kissed on the lips. Third, the officers who searched Josephson's house testified that they observed a dramatic change in Josephson's demeanor when they began disassembling the picture frame containing the explicit photographs. They testified that he began to sweat profusely and to make grunting noises, and that his behavior was so odd that they decided to move him farther away from the detective disassembling the frame out of fear that he might do something rash. Finally, the police found photographic paper in Josephson's residence that matched the paper on which the explicit photographs were printed. In light of this evidence, the decision to prevent Josephson from asking Jennifer whether she had had sex with someone else cannot be said to have had a substantial and injurious effect or influence in determining the jury's verdict.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that Josephson's petition for writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 4th day of May, 2011.

/s_____
LYNN ADELMAN
District Judge